UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| ANGELA A. MANSFIELD, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV419-168 |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | |

# **ORDER**

*Pro se* plaintiff Angela Mansfield has filed this Complaint against the United States alleging that its employees and agents, specifically, medical providers at the Department of Veterans Affairs (VA) failed to provide a proper course of medical care to her late husband. *See generally* doc. 1. Because Mansfield was granted leave to proceed *in forma pauperis*, the Court must screen her Complaint pursuant to 28 U.S.C. § 1915(e)(2). Before considering the substance of the Complaint, however, the Court must address several administrative and procedural issues.

Mansfield has filed a motion for entry of default and for default judgment. *See* doc. 9 & 14. Her motion for entry of default alleges that service was effected on the United States on July 30, 2019. Doc. 9. That date corresponds to the mailing date on a Certified Mail receipt

addressed to the United States Department of Justice (DOJ). *See* doc. 8. Mailing a copy of the Complaint to the DOJ is not, however, sufficient to serve the United States. *See* Fed. R. Civ. P. 4(i). Even assuming that mailing the Complaint to the Department, and not to the Attorney General, satisfied Rule 4(i)(1)(B), there is no indication that she served the United States Attorney for this district, as required by Rule 4(i)(1)(A). "Before a default can be entered, . . . party must have been *effectively* served with process." 10A Fed. Prac. & Proc. Civ. § 2682 (4th ed. 2019) (emphasis added). Since the United States has not been properly served, the motion for entry of default, doc. 9, is **DENIED**.[1] The motion for default judgment is **DISMISSED** as moot. Doc. 14.

Mansfield also seeks to seal parts of the Complaint she has already filed. *See* doc. 6. Specifically, she seeks to seal her deceased husband's medical records, *see id.*, which are attached as exhibits to the Complaint, *see, e.g.,* doc. 1-1 at 25-28, doc. 1-2 at 13-58. It is not clear that the confidentiality of these records can be maintained, given their obvious relevance to any malpractice claim. Nevertheless, there does not appear

---

[1] Since plaintiff has been granted leave to proceed *in forma pauperis*, she would be entitled to service by the United States Marshal. *See* Fed. R. Civ. P. 4(c)(3).

to be any reason for these documents to be attached to the Complaint. Sealing the exhibits entirely is complicated by plaintiff's inclusion of supplemental pages of the Complaint among them. *See* doc. 1-1 at 3-7. Since, as discussed below, plaintiff must submit an amended Complaint, the Court will **GRANT** her request to seal the Complaint and its exhibits from the public docket for the time being. Doc. 6. The Court notes however, that a permanent seal is unlikely in this case given the apparent relevance of the medical records to the underlying action, as well as the fact that her husband is deceased.

Plaintiff is advised that any amended pleading she submits, as discussed below, will be publicly available. She should, therefore, exercise discretion about any attachments or exhibits she includes with that pleading. Finally, although the original Complaint will be sealed from public view, the defendant is entitled to access it, in the event that the amended Complaint passes screening. Accordingly, although the Complaint is sealed from public view, the Clerk is **DIRECTED** to make copies available to the defendant upon request.

Finally, Mansfield has filed discovery requests directed at the United States. *See* doc. 10 (Requests for Admission). Since service has

not been effected, discovery is premature. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," except in circumstances not applicable here). Even if that the discovery period were open, there is no indication that Mansfield served her requests as required by Rule 36, triggering the deadline for a party's response. *See* Fed. R. Civ. P. 36(a)(1), (3). To the extent that the "motion" seeks compliance with discovery obligations that have not accrued, it is **DENIED** as premature. Doc. 10.

Substantively, plaintiff's Complaint is insufficient. The Complaint identifies several Constitutional Amendments, statutes, and common-law principles as the bases for her claims. *See* doc. 1 at 3. The factual allegations, however, indicate that her claims are most properly construed as medical malpractice and wrongful death claims against the VA. Generally, the United States and its agencies are immune from suit. *See, e.g., United States v. Bormes*, 568 U.S. 6, 9 (2012) ("Sovereign immunity shields the United States from suit absent a consent to be sued that is unequivocally expressed." (quotes and cite omitted)). The most plausible basis for a suit such as this one is the Federal Tort Claims Act (FTCA). *See* 28 U.S.C. § 2674; *see also Caldwell v. Klinker*, 646 F. App'x

842, 846 (11th Cir. 2016) ("Because the FTCA was the exclusive remedy for [plaintiff's] tort claims for money damages," the district court properly reconstrued medical malpractice and negligence claims as FTCA claims, notwithstanding that the "complaints did not clearly identify the legal basis for his claims"). The correspondence with the VA that Mansfield has attached indicates that the agency treated her claims as arising under the FTCA. *See* doc. 1-1 at 9 (denying plaintiff's claim and informing her of her right to sue under the FTCA).

The FTCA provides that "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."[2] 28 U.S.C. § 2674. Further the FTCA establishes that liability is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Courts have explained that the "law of the place" incorporates the law of the

---

[2] The FTCA requires that prospective plaintiffs file their claims with the appropriate agency and receive a final determination of the validity of those claims. *See McNeil v. United States*, 508 U.S. 106, 113 (1993)("The FTCA bars claimants from brining suit in federal court until they have exhausted their administrative remedies."). It appears that Mansfield has satisfied the exhaustion requirement, at least for screening purposes. Her Complaint alludes to her presentation of her claim to the VA, doc. 1-1 at 5, and the attached documents include a letter from the VA denying her claim, *id.* at 9.

state where the alleged tort occurred.  *See Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001); *see also, e.g., Molzof v. United States*, 502 U.S. 301, 305 (1992) ("[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law."). Moreover, "unless the facts support liability under state law, the district court lacks subject matter jurisdiction to decide an FTCA claim." *Id.* (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990) (*per curiam*)). Mansfield's Complaint clearly alleges that the VA's medical malpractice occurred in Georgia. *See* doc. 1 at 4 (alleging that her late husband "was seen by the VA clinic in Savannah, Georgia from 2000-2016).

In Georgia, "[t]here essential elements [are necessary] to establish liability in a medical malpractice action . . . : (1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury sustained." *Zwiren v. Thompson*, 578 S.E.2d 862, 864 (Ga. 2003) (quotes and cite omitted); *see also, e.g., Pham v. Black*, 820 S.E.2d 209, 212 (Ga. Ct. App. 2018) (identifying the elements of a medical malpractice claim under Georgia law as "well

settled). In addition to those requirements, Georgia law also requires medical-malpractice plaintiffs to submit an affidavit from a competent expert, "set[ting] forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." O.C.G.A. § 9-11-9.1(a). Plaintiff has not submitted an affidavit.[3]

The application of Georgia's affidavit requirement in federal cases is not entirely clear. The requirement clearly *does not* apply to medical malpractice actions pursued under the Court's diversity jurisdiction. *See, e.g., Allen v. Kroger Co.*, 2018 WL 6729646, at * 5 (M.D. Ga. Dec. 21, 2018) (explaining that the Middle District "has consistently held that the expert affidavit rules of Ga. Code Ann. § 9-11-9.1 are purely procedural and therefore not applicable in cases before the Court under diversity jurisdiction." (citations omitted)). Nevertheless, there is some authority in the Circuit that such an affidavit *is* required in FTCA cases. *See Nelson v. United States*, 478 F. App'x 647, 648 (11th Cir. 2012) (noting that an FTCA plaintiff, proceeding under Missouri law, who failed to file an affidavit was subject to dismissal without prejudice); *see also Fluellen*

---

[3] Although not entirely clear, the Complaint suggests that Mansfield may be aware of the affidavit requirement. She states that she has commissioned her "husband's former cardiologist" to review his medical records and that the review is "still in process." Doc. 1-1 at 7.

*v. United States*, 2008 WL 4360618, at * 5 (S.D. Ga. Sept. 24, 2008) (listing the affidavit requirement in discussing the elements of an FTCA medical malpractice claim). The Court is unaware, however, of any case definitively applying Georgia's affidavit requirement to an FTCA claim.

Several United States Courts of Appeals have held that other states' affidavit requirements apply to FTCA malpractice claims. The Ninth Circuit determined that Nevada's affidavit requirement applied to an FTCA malpractice claim. *See Swails v. United States*, 406 F. App'x 124, 126 (9th Cir. 2010) (concluding that, since FTCA claim was governed by state law and alleged professional malpractice, plaintiff "was obliged to submit an affidavit of merit when he filed suit."). Likewise, the Third Circuit has held that a New Jersey statute requiring an affidavit "when 'the underlying factual allegations of the claim require proof of a deviation from the professional standard of care for that specific profession,'" applied to support summary judgment against a *pro se* plaintiff. *See Horne v. United States*, 223 F. App'x 154, 156 (3d Cir. 2007). The Eighth Circuit has also affirmed dismissals of FTCA malpractice claims for failure to comply with state affidavit requirements. *See Mathison v. United States*, 44 F. App'x 27, 28-29 (8th Cir. 2002).

The Fourth Circuit has considered the application of North Carolina's affidavit requirement, which is strikingly similar to Georgia's. North Carolina law requires that medical malpractice complaints "'specifically assert[ ]'" that the medical evidence has been reviewed "'by a person who is reasonably expected to qualify as an expert witness . . . and who is willing to testify that the medical care did not comply with the applicable standard of care.'" *Littlepaige v. United States*, 528 F. App'x 289, 292 (4th Cir. 2013) (quoting N.C. Gen. Stat. § 1A-1, Rule 9(j)). The court determined that the requirement applied to FTCA claims governed by North Carolina law. *Id.* at 292-93. The Courts of Appeals analyses support, if not conclusively, the application of Georgia's affidavit requirement in the FTCA context.

District Courts have similarly applied state affidavit requirements to FTCA malpractice claims. *See, e.g., Sowers v. United States*, 141 F. Supp. 3d 471, 476-77 (E.D. Va. 2015) (Concluding that the FTCA's limited waiver of sovereign immunity, "to the same extent as a private individual in like circumstances," 28 U.S.C. § 2674, "points persuasively to the conclusion that the entire [Virginal medical malpractice statute], *including the certification requirement,* applies. Just as a private party

in Virginia would not be liable if a plaintiff failed to meet the [statute's] certification requirement, so, too, would the government not be liable if an FRCA plaintiff failed to meet that requirement." (emphasis added)); *Williams v. United States*, 754 F. Supp. 2d 942, 947-49 (W.D. Tenn. 2010)[4] (applying *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) to conclude that Tennessee requirement that malpractice plaintiffs provide "a signed written statement in which the expert opines that there is a good faith belief for plaintiff's claim, . . . , and that the expert is competent to give that opinion," and collecting cases applying affidavit/certification requirements in FTCA cases (citing Tenn. Code Ann. § 29-26-115)). The

---

[4] The value of the Western District of Tennessee's analysis is limited as it relies on the determination that, under *Erie*, the Tennessee provision at issue is substantive and not merely procedural. *See Williams*, 754 F. Supp. 2d at 953. As discussed above, courts in this Circuit have concluded that Georgia's affidavit requirement is procedural and not substantive. *See, e.g., Baird v. Celis*, 41 F. Supp. 2d 1358, 1362 (N.D. Ga. 1999) (applying *Erie* analysis and declining to apply § 9-11-9.1 in diversity case). However, there is reason to question the Tennessee court's application of *Erie* to the FTCA. Neither of the statutory sections cited impose an *Erie*-style analysis. *See Williams*, 754 F. Supp. 2d at 949 (citing 28 U.S.C. §§ 1346(b)(1), 2674). Further the Supreme Court case cited doesn't mention *Erie* at all. *See id.* (citing *Malzov v. United States*, 502 U.S. 301 (1992)). As discussed above, there is reason to think that the application of state law under the FTCA is distinct from the application of state law in diversity cases. *See also Cibula v. United States*, 551 F. 3d 316, 321 (4th Cir. 2009) ("[B]ecause the FTCA contains an explicit instruction by Congress regarding which law to use, courts should not engage in their normal *Erie* analysis to make that determination." (citing *Smith v. United* States, 507 U.S. 197, 201 (1993)); Dutton *v. United States*, 621 F. App'x 962, 966 (11th Cir. 2015) (noting, in considering whether to apply the Federal Rules of Evidence or Georgia law to FTCA case, that: "This, of course, is an FTCA case, not a supplementary jurisdiction case, so the *Erie* doctrine does not apply.").

United States District Court for the Eastern District of Ohio, while conceding some disagreement, described the application of affidavit requirements in medical malpractice cases as "the *overwhelming majority* position." *Bennafield v. United States*, 2013 WL 5173221, at * 1-2 (E.D. Ohio Sept. 12, 2013) (emphasis added) (collecting cases). Based on the balance of authority, if not complete agreement of analyses, the Court finds that Georgia's affidavit requirement should apply to this FTCA/medical malpractice case.

The Court is obligated to dismiss an *in forma pauperis* action, "at any time" upon determination that it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Georgia law is clear that "[a]bsent compliance with the expert affidavit requirement, a medical malpractice claim is subject to dismissal for failure to state a claim." *Jensen v. Yong Ha Engler*, 733 S.E.2d 52, 54 (Ga. Ct. App. 2012). In the absence of the required affidavit, therefore, Mansfield's medical malpractice claims are subject to dismissal. However, the statute also contains a "safe harbor" provision. *See* O.C.G.A. 9-11-9.1(e) (permitting noncompliant plaintiffs thirty days to cure). Application of that provision is also consistent with the Eleventh Circuit's mandate to permit *pro se*

plaintiffs at least one opportunity to amend defective pleadings. *See Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) ("[W]hen a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action." (citation omitted)). Accordingly, Mansfield is **DIRECTED** to file an Amended Complaint within thirty days from the date of this Order which attaches an affidavit complying with the requirements of O.C.G.A. § 9-11-9.1.

In the event that Mansfield pursues this case and files an Amended Complaint, there are several other issues she should address. First, her Complaint suggests that, in addition to her husband's death, she seeks damages for, at least, pain he suffered prior to his death resulting from the alleged malpractice. *See*, e.g., doc. 1-1 at 5 (referring to mental and physical suffering resulting from the failure to timely diagnose amyloidosis); *but see* doc. 1 at 4 (listing only wrongful death and loss of consortium damages), 4-5 (leaving section for specifying relief sought blank). To the extent that such damages are appropriate, it is not entirely clear that Mansfield is the proper plaintiff.

Georgia's Wrongful Death statute establishes that a surviving spouse "may recover for the homicide of the spouse . . . the full value of the life of the decedent, as shown by the evidence." O.C.G.A. § 51-4-2(a); *see also* O.C.G.A. § 51-4-1(2) (defining "homicide" to include "all cases in which the death of a human being results from[, among other causes] . . . negligence"). As a surviving spouse, therefore, Mansfield appears to be the appropriate plaintiff for purposes of the wrongful death claim. Any claim for pain and suffering, however, can only be brought by a representative of her husband's estate. *See, e.g., Blackstone v. Blackstone*, 639 S.E.2d 369, 517 n. 5 (Ga. Ct. App. 2006) (explaining that a survival action for a decedent's pain and suffering "is separate and distinct" from the wrongful death action and "vests in the personal representative or administrator of the [decedent's] estate."). To the extent that Mansfield wishes to assert such a claim, she must either plead as the estate's representative or join such a claim by that representative to her wrongful death claim.

Finally, plaintiff is advised that her amended complaint will supersede her original complaint and therefore must be complete in itself. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345,

1345 n. 1 (11th Cir. 1999); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). As discussed above, Mansfield's amended complaint must attach an affidavit complying with the requirements of O.C.G.A. § 9-11-9.1. To the extent that she asserts a claim for her husband's pain and suffering prior to his death, that claim must be asserted in her capacity as representative of his estate or by that representative. Upon receipt of that amended complaint, the Court will conduct the required pre-service screening required by 28 U.S.C. § 1915(e)(2). Since the Court is requiring Mansfield to file an amended complaint, her motion to amend is **DISMISSED** as moot. Doc. 7.

In summary, plaintiff's motion to seal the original complaint, doc. 6, is **GRANTED**, subject to the specific provisions discussed above. Her motion to amend the complaint, doc. 7, is **DISMISSED** as moot. Her motions based on the Government's failure to respond to pleadings and discovery, doc. 9, doc. 10, doc. 14, are **DENIED** and **DISMISSED** as moot, as discussed above.

**SO ORDERED**, this 6th day of March, 2020.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA